IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| OFF THE GRILL FRANCHISING, LLC, f/k/a GRILLCO, LLC | ) ) ) | |
| v. | ) ) | NO. 3:05-0650 JUDGE CAMPBELL |
| HICKORY PARTNERS, LLC, et al. | ) | |

MEMORANDUM

Pending before the Court is Plaintiff/Counter-Defendant's Motion for Partial Summary Judgment (Docket No. 24). For the reasons stated herein, Plaintiff/Counter-Defendant's Motion (Docket No. 24) is GRANTED in part and DENIED in part. Plaintiff/Counter-Defendant's Motion (Docket No. 24) is GRANTED as to Count One of Defendants', Hickory Partners, LLC ("Hickory Partners"), Anthony Brian Gulsby ("Anthony Gulsby") and Charles William Gulsby ("Charles Gulsby") (collectively "Defendants"), Counterclaim (Docket No. 9), and Count One of Defendants' Counterclaim (Docket No. 9) is DISMISSED. Plaintiff/Counter-Defendant's Motion (Docket No. 24) is DENIED as to Count Two of Defendants' Counterclaim (Docket No. 9).

FACTS

On August 1, 2003, Defendant Hickory Partners entered into a Unit Franchise Agreement (the "Unit Franchise Agreement") with Off The Grill Franchising, Inc. ("OTGF"), predecessor to Plaintiff/Counter-Defendant, Off The Grill Franchising, LLC ("OTG"), to operate an Off The Grill restaurant in Montgomery, Alabama (the "Restaurant") (Docket No. 30 at 1). During the franchise negotiations, Defendants negotiated for amendments to the standard franchise license agreement that were included in an Amendment to Unit Franchise Agreement (the "Amendment

to Unit Franchise Agreement") (Docket No. 30 at 2). Defendants and OTGF also entered into a Guaranty of Franchise Owner's Undertakings (the "Guaranty of Franchise Owner's Undertakings") (Docket No. 30 at 2 and Docket No. 1 at 2) (the Unit Franchise Agreement, together with the Amendment to Unit Franchise Agreement and the Guaranty of Franchise Owner's Undertakings are herein collectively referred to as the "Agreement").[1]

In 2004, OTGF filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court") (Docket No. 30 at 2). OTG purchased certain assets and assumed certain executory contracts of OTGF from the bankruptcy estate, free and clear of all liens, claims and encumbrances pursuant to the provisions of 11 U.S.C. §363, as confirmed in the Bankruptcy Sale Order issued by the Bankruptcy Court on July 6, 2004 (the "Sale Order") (Docket No. 30 at 2-3). As part of the Bankruptcy Court sale, Defendant Hickory Partners was given notice of the proposed sale, the opportunity to object, notice of the proposed assumption of the Agreement, and an opportunity to assert any defaults and cure amounts owed under the Agreement (Docket No. 30 at 3). Defendant Hickory Partners did object to the Bankruptcy Court sale (Docket No. 3 at 3). Defendant Hickory Partners, however, failed to pursue its objection (Docket No. 30 at 3). In addition, Defendants did not claim that there were any defaults under the Agreement, and they did not assert that there were any cure amounts owed (Docket No. 30 at 3-4). OTG was the

---

[1]Defendants also assert that a Territory Option Agreement was executed by Defendants and OTGF in connection with the Agreement, and include the Territory Option Agreement in their request for rescission under Count One of their Counterclaim (Docket No. 9). For purposes of this Memorandum, the term "Agreement" shall also include the Territory Option Agreement.

2

highest bidder at the Bankruptcy Court sale, after which the Bankruptcy Court entered the Sale Order (Docket No. 30 at 4).

Without seeking approval and in violation of the Agreement, Defendant Hickory Partners closed the Restaurant (Docket No. 30 at 4). OTG became concerned over missed payments, as well as the damage that its brand was suffering because of the empty franchise location, which prominently displayed OTG's trademark and trade-dress (Docket No. 30 at 4). On June 15, 2005, OTG sent Defendants a letter terminating the Unit Franchise Agreement (Docket No. 1, Ex. 7). On August 23, 2005, OTG filed suit against Defendants in this Court and sought a preliminary injunction seeking to prevent further damage to its trademark, trade dress and its brand (Docket No. 30 at 5).

In response to OTG's suit, Defendants filed a two count Counterclaim (Docket No. 9). In Count One of the Counterclaim, Defendants ask for rescission of the Agreement on the grounds that it was induced by the fraud of Alan Thompson ("Thompson"), agent/employee of OTG and President and Chief Executive Officer of OTGF, on behalf of OTGF, and is, therefore, void or voidable notwithstanding the intervening Sale Order. In Count Two of the Counterclaim (Docket No. 9), Defendants assert a claim for breach of contract against OTG and damages because of such alleged breach. More specifically, Defendants assert that after assuming the Agreement, OTG violated the Agreement and OTG's obligations thereunder.

OTG responded to Defendants' Counterclaim, by filing its motion for partial summary judgment (Docket No. 24) on Defendants' Counterclaim. OTG asserts that Count One of Defendants' Counterclaim, that the Agreement is void or voidable because of fraud, is barred by the doctrine of res judicata. More specifically, OTG asserts that OTG's purchase of the assets of

3

OTGF through a sale approved by the Bankruptcy Court, and Defendants' failure to object to the sale, extinguished any claims that Defendants might have had relating to the alleged fraud of Thompson and OTG in the formation of the Agreement. With respect to Count Two of Defendants' Counterclaim, that OTG violated its obligations under the Agreement after the Bankruptcy Court sale, OTG alleges that Defendants had defined and established methods under Paragraph 13.I of the Amendment to Unit Franchise Agreement ("Paragraph 13. I) to apprise OTG of allegations that OTG had breached its obligations or made false representations. OTG further alleges that Defendants failed to give OTG the notice of breach or false representation as required by Paragraph 13.I, and therefore, cannot now claim breach of the Agreement.

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

4

Case 3:05-cv-00650   Document 34   Filed 05/24/06   Page 4 of 11 PageID #: 308

ANALYSIS

1. Res Judicata

In response to OTG's motion for summary judgment on Count One of Defendants' Counterclaim, Defendants assert that the Sale Order has no effect on a fraudulent inducement defense that goes to the formation of executory contracts assigned and assumed pursuant to the Sale Order, and, therefore, the doctrine of res judicata does not serve as a bar to their claims. Furthermore, Defendants argue that even if the Court accepts the premise that the doctrine of res judicata can operate to bar their fraudulent inducement defense, OTG is unable to establish all of the elements of a res judicata defense.

"A claim is barred by the res judicata effect of prior litigation if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." Browning v. Levy, 283 F. 3d 761, 771 (6th Cir. 2002) (internal quotations and citations omitted).

In the present case, the Court finds that the res judicata effect of the Sale Order bars Defendants' argument that the Agreement is void or voidable because of OTGF fraud in the inducement, whether such argument is asserted in the context of an affirmative defense or in terms of a counter-claim.

With respect to the first element of the res judicata doctrine, the Sale Order constitutes a final decision on the merits by a court of competent jurisdiction. As a general rule a Bankruptcy Court order confirming a judicial sale of property of a debtor's estate is a final order. See, In re

5

Met-L-Wood Corp., 861 F. 2d 1012, 1016 (7th Cir. 1988) (After time for appeal of bankruptcy court order confirming judicial sale of debtor's property had lapsed, res judicata barred new suit attacking order confirming judicial sale by party to proceeding.) See also, Hendrick v. Avent, 891 F. 2d 583, 586 (5th Cir. 1990) (Bankruptcy court's order approving sale of debtor's stock free and clear of all encumbrances was final judgment and was res judicata as to claim of trustee and debtor seeking rescission of sale.)

In the present case, it is undisputed that the Sale Order was issued by the Bankruptcy Court on July 6, 2004 and that Defendants failed to pursue their objection to the Bankruptcy Court sale (Docket No. 30 at 3). Furthermore, there is no evidence before the Court that Defendants made any attempt to appeal the Sale Order once entered or, alternatively, made a motion to vacate the Sale Order under Rule 60(b). Accordingly, the validity of the sale has been established. Id. at 1018.

With respect to the second element of res judicata, Defendants do not dispute that it has been met in this case. In any event, the Court finds that Defendants and OTG were either parties or privies to the Bankruptcy Court sale. "Res judicata bars not only the actual parties to an earlier bankruptcy proceeding from later bringing suits which should have been brought in the context of the proceeding, but also those in privity with the parties." Browning, 283 F. 3d at 772 (quoting Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F. 2d 474, 481 (6th Cir. 1972)). Privity in the context of res judicata also means a successor in interest to a party, one who controlled an earlier action, or one whose interests were adequately represented in a prior action. Id.; Sanders, 973 F. 2d at 481. In the present case, it is undisputed that Defendant Hickory Partners was given notice of the Bankruptcy Court sale and filed an objection to the sale

6

(Docket No. 30 at 3).  It is also undisputed that OTG was the high bidder at the Bankruptcy Court sale, and, thus, a party to the Bankruptcy Court sale as well.  Accordingly, the undisputed facts before the Court are that Defendant Hickory Partners and OTG were parties to the proceedings in the Bankruptcy Court.  The Court also finds that Anthony Gulsby and Charles Gulsby were in privity with the parties to the Bankruptcy Court sale in that it is admitted that Anthony Gulsby and Charles Gulsby are managers of Hickory Partners, and, thus, their positions allowed them to control the actions of Hickory Partners in connection with the Bankruptcy Court sale (Docket No. 1 and 1-2 and Docket No. 9 at 1).

 Next, the Court finds that OTG has established the third element of res judicata.  "The third element of res judicata prohibits parties from bringing claims they have already brought or should have brought."  Sanders, 973 F. 2d at 482.  See also, In re Colonial Mortgage Bankers Corp., 324 F. 3d 12, 20 (1st Cir. 2003) (Res Judicata bars not only those theories that were actually litigated in the earlier action but also those theories that could have been litigated therein.)  Defendants' fraudulent inducement defense to formation of the Agreement assumed by OTG pursuant to the Sale Order should have been brought in the Bankruptcy Court context.  Defendants' claims of fraudulent inducement go directly to the validity of the asset sale conducted by the Bankruptcy Court and the value of the assets transferred pursuant to the Sale Order and could have been addressed in the context of the Bankruptcy Court proceeding.  To hold otherwise and allow Defendants to re-litigate claims already determined by the Bankruptcy Court would undermine the integrity of the underlying Bankruptcy Court process.

 Finally, the Court finds an identity of the causes of action at issue.  The fourth element of res judicata is satisfied if the claims at issue arose out of the same transactions or series of

transactions, or out of the same core operative facts.  Browning, 283 F. 3d at 773-774.  "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'"  Sanders, 973 F. 2d 483-484 (quoting Westwood Chemical Co. v. Kulick, 656 F. 2d 1224, 1227 (6th Cir. 1981)).  In the present case, the "identity of claims" is demonstrated by the fact that Defendants' attack on the formation of the Agreement arises out of the same core operative facts related to the value of the assets and validity of their transfer considered by the Bankruptcy Court in entering the Sale Order.

Having determined that all four elements of res judicata have been established, the Court finds that Defendants' Counterclaim for rescission of the Agreement is barred by the res judicata effect of the Sale Order, and Count One of Defendants' Counterclaim (Docket No. 9) is DISMISSED.

2.  Notice

In response to OTG's motion on Count Two of Defendants' Counterclaim, Defendants assert that OTG's termination of the Agreement relieved Defendant Hickory Partners from its obligations pursuant to Paragraph 13.I to provide OTG with notice of any breach of the Agreement.  More specifically, Defendants assert that Paragraph 13.I did not survive termination of the Agreement in that it is not one of the provisions of the Agreement that the parties specifically agreed would survive termination of the Agreement.  In addition, Defendants assert that OTG's construction of Paragraph 13.I is unreasonable in that no purpose would be served in giving OTG notice of breach of an already terminated contract.   Furthermore, Defendants assert that their counterclaims are compulsory counterclaims that they were forced to plead in their

8

initial pleading in this case, and a requirement of notice and cure would lead to the unconscionable result of forcing Defendants to abandon their counterclaims.

Paragraph 13.I of the Amendment to the Unit Franchise Agreement provides as follows:

In the event that Franchise Owner shall claim that Franchisor has breached any portion of this Agreement or any obligations arising out of or related to this Agreement or the relationship created hereby, *or has made any materially false statement or report* prior to instituting the dispute resolution procedures set forth in Section 21, Franchise Owner shall give Franchisor written notice in the manner set forth in Section 20, detailing the nature of such breach, and shall thereafter provide Franchisor with such evidence thereof as Franchisor may request. Thereafter, Franchisor shall have a reasonable opportunity to cure such breach, in no event less than 30 days from the date Franchisor receives notice of the breach or the date Franchisor receives such evidence as Franchisor may have requested from Franchise Owner (whichever is later). Failure to give such notice and opportunity to cure shall constitute a waiver of and an absolute defense to any claim by Franchise Owner as to any such alleged breach. If after such notice and opportunity to cure has been provided Franchisor in the manner set forth herein, Franchise Owner believes in good faith that Franchisor remains in breach of this Agreement, Franchise Owner shall then institute the dispute resolution procedures set forth in Section 21.

(Docket No. 1, Ex. 4 at 16).

There appears to be no dispute between the parties as to what law governs the Court's interpretation of the Agreement and Paragraph 13.I. Defendants assert that Alabama law governs interpretation of the Agreement, and OTG has not asserted otherwise. Regardless, however, whether Alabama or Tennessee law applies, the Court construes the words of Paragraph 13.I in accordance with their ordinary meaning. Under Alabama law, "'it is well settled that the words of a contract are to be given their ordinary meaning and that the intention of the parties is to be derived, if possible, from the provisions of the contract itself.'" Peerless Landfill Co., Inc. v. Haleyville Solid Waste Disposal Authority, ___ So. 2d ___ (Ala. Civ. App. 2006) (quoting Food Service Distributors, Inc. v. Barber, 429 So. 2d 1025, 1028 (Ala. 1983)) "'It is presumed that parties intend to make a reasonable, rational contract.'" Industrial

9

Machinery, Inc. v. Creative Displays, Inc., 344 So. 2d 743, 747 (1977) (quoting Lowery v. May, 213 Ala. 66, 71, 104 So. 5, 9 (Ala. 1925)). Similarly, under Tennessee law, "'The goal of contract interpretation is to ascertain the intent of the parties according to the usual, natural, and ordinary meaning of the words used by the parties.'" Vantage Technology, LLC v. Cross, 17 S.W. 3d 637, 650 (Tenn. App. 1999) (quoting Guiliano v. Cleo, Inc., 995 S.W. 2d 88, 95 (Tenn. 1999)). "'Any ambiguity is to be construed against the drafter.'" Id. (quoting Spiegel v. Thomas Mann & Smith, P.C., 811 S.W. 2d 528, 531 (Tenn. 1991)). "'Contracts must be construed, as far as is reasonable, so as to give effect to every term.'" Id. (quoting Wilson v. Moore, 929 S.W. 2d 367, 373 (Tenn. App. 1996)). In applying these principles to Paragraph 13.I, the Court finds that it would be unreasonable to read Paragraph 13.I as allowing OTG to cut off Defendants' claims by terminating the Agreement. The Court also finds that the ordinary meaning of the words of Paragraph 13.I clearly indicates that application of Paragraph 13.I is limited to the situation where Defendants claim a breach of the Unit Franchise Agreement by OTF and the requirement of notice and opportunity for cure prior to institution of and submission of the claim to the dispute resolution procedures set forth in Paragraph 21 of the Unit Franchise Agreement. Paragraph 31.1 does not contemplate a mutual dispute between the parties such as the case before the Court, or the requirement of notice and cure when Franchisor is the party claiming breach. Once OTG elected to terminate the Agreement and file suit against Defendants, Paragraph 13.I has no further application.

10

Accordingly, OTG's Motion for Summary Judgment (Docket No. 24) on Count Two of Defendants' Counterclaim (Docket No. 9) is DENIED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE